# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued May 9, 2019          Decided August 23, 2019

No. 18-5188

HUMANE SOCIETY OF THE UNITED STATES, ET AL.,
APPELLEES/CROSS-APPELLANTS

v.

SONNY PERDUE, SECRETARY OF THE UNITED STATES
DEPARTMENT OF AGRICULTURE,
APPELLANT/CROSS-APPELLEE

NATIONAL PORK PRODUCERS COUNCIL,
APPELLANT/CROSS-APPELLEE

———

Consolidated with 18-5197, 18-5201

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:12-cv-01582)

———

*Lewis S. Yelin*, Attorney, U.S. Department of Justice, argued the cause for appellant/cross-appellee Sonny Perdue. With him on the briefs were *Scott R. McIntosh*, Attorney, and *Stephen A. Vaden*, General Counsel, U.S. Department of Agriculture.

*Rebecca E. Bazan* argued the cause for appellant/cross-appellee National Pork Producers Council. With her on the briefs was *John M. Simpson*. *Michelle C. Pardo* entered an appearance.

*Matthew E. Penzer* argued the cause and filed the briefs for appellees/cross-appellants. *Ralph E. Henry* and *Peter A. Brandt* entered appearances.

Before: GRIFFITH, KATSAS, and RAO, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*: In this case, a pork farmer contends that the government unlawfully has permitted funds for promoting the pork industry to be used instead for lobbying on the industry's behalf. We consider whether, on summary judgment, the farmer has proven his constitutional standing to maintain this lawsuit.

I

The Pork Promotion, Research, and Consumer Information Act requires the federal government to promote the American pork industry. The Act authorizes the government to collect assessments (often called "checkoffs") from pork producers to finance efforts to "strengthen the position of the pork industry in the marketplace," 7 U.S.C. § 4801(b)(1)(A), and "maintain, develop, and expand markets for pork and pork products," *id.* § 4801(b)(1)(B). These assessments are paid to the National Pork Board, an entity established to "develop … proposals for promotion, research, and consumer information plans and projects." *Id.* § 4808(b)(1)(A). The Department of Agriculture must approve the Board's promotional efforts and its annual expenses. *Id.*

§ 4808(b)(1)–(3). The Board may contract with private entities to carry out those efforts, again with USDA's approval. *Id.* § 4808(b)(4)(A). The Act prohibits using checkoff funds "for the purpose of influencing legislation." *Id.* § 4809(e).

In 2006, the Board purchased four trademarks from the National Pork Producers Council, a private lobbying organization for the pork industry. The trademarks were associated with the slogan "Pork: The Other White Meat." The agreement required the Board to pay $3 million per year for twenty years, but permitted the Board, with advance notice, to cancel the contract for any reason. In 2011, the Board adopted a new marketing campaign and stopped using three of the four trademarks, but it declined to end the contract and continued to make the annual payments.

In 2012, the Humane Society of the United States, Iowa Citizens for Community Improvement, and Harvey Dillenburg filed this lawsuit against the Secretary of Agriculture. The Humane Society is an animal-protection organization; Iowa Citizens is an organization of farmers; and Dillenburg is an individual pork farmer. They sought to challenge both USDA's initial approval of the contract and its later approvals of the annual payments. They contend that the contract impermissibly funds the Council's lobbying activities, which has become more apparent as the Board continues to pay for trademarks that it no longer uses. The complaint alleges that this misuse of checkoff funds "diminishes the resources available for promotions or other legitimate programs" under the Act, thus "diminishing Mr. Dillenburg's return on his compelled checkoff investment." J.A. 51. The complaint further alleges that Dillenburg is harmed by the payment of funds to the Council, "a lobbying organization that pushes for policies" he opposes. *Id.*

On a motion to dismiss, the district court held that none of the plaintiffs adequately alleged standing. *Humane Soc'y v. Vilsack*, 19 F. Supp. 3d 24 (D.D.C. 2013) (*Humane Society I*). In part, the court reasoned that Dillenburg's "claimed reduced return on investment" was "unsupported by facts," because studies showed that the checkoff program yielded increasing returns to farmers over the periods at issue. *Id.* at 35–36.

This Court reversed. *Humane Soc'y v. Vilsack*, 797 F.3d 4 (D.C. Cir. 2015) (*Humane Society II*). We held that Dillenburg's first alleged injury—reduced "return on his investment" from the misuse of checkoff funds—described a "classic form of concrete and particularized harm: actual economic loss." *Id.* at 8–9. We credited allegations that the Board was paying too much for the trademarks and that other advertising would have better propped up demand for pork. *See id.* We therefore assumed that "the price at which pork producers can sell their hogs is lower than it would be if the Board were spending those funds on legitimate promotions." *Id.* at 9. After concluding that Dillenburg thus adequately had alleged standing, we declined to consider whether the Humane Society or Iowa Citizens had done so. *Id.* at 10.

On remand, the parties entered a joint stipulation. USDA agreed, in deciding whether to approve the 2016 and future contract payments, to re-value the trademarks and to consider evidence submitted by the plaintiffs. At the same time, the plaintiffs agreed to dismiss their claims for recoupment of funds already spent. The Council intervened as a defendant shortly thereafter. After completing its review, USDA decided to authorize future contract payments.

The parties then filed cross-motions for summary judgment. In support of standing, Dillenburg submitted a declaration stating that the contested payments prevented

checkoff funds "from being used for promotions and other legitimate demand-enhancement activities" required by the Pork Act, thus depriving him "of the direct economic benefit of the lawful and effective promotions to which [he is] entitled as a statutory beneficiary." J.A. 147. Dillenburg further stated that he opposed using checkoff funds to lobby for "policy activities that [he] believe[s] are harmful to [him]." *Id.* Neither the Humane Society nor Iowa Citizens filed standing affidavits.

The district court held that Dillenburg adequately proved standing. *Humane Soc'y v. Perdue*, 290 F. Supp. 3d 5, 15–18 (D.D.C. 2018) (*Humane Society III*). The court reasoned that Dillenburg, as a pork farmer, "is affected by the market price for pork." *Id.* at 16. Moreover, it concluded that the alleged diversion of "millions of checkoff dollars" from legitimate pork promotion was enough to show "economic loss." *Id.* at 17. After finding standing, the court rejected challenges to approvals made by USDA before 2016 as either untimely or moot, but it held that the 2016 decision to continue paying for the trademarks was arbitrary and capricious. *See id.* at 18–30.

All parties have appealed. Our review is *de novo*. *Trudel v. SunTrust Bank*, 924 F.3d 1281, 1285 (D.C. Cir. 2019).

II

The Constitution limits the "judicial Power of the United States" to "Cases" or "Controversies." U.S. Const. art. III, §§ 1–2. "To state a case or controversy under Article III, a plaintiff must establish standing." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011). The test for standing is settled: a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

In *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the Supreme Court addressed the plaintiff's burden to prove standing. The Court explained that "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. Thus, at the pleading stage, the complaint must "'state a plausible claim' that each element of standing is satisfied." *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 513 (D.C. Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). But on summary judgment, "the plaintiff can no longer rest on such mere allegations." *Defs. of Wildlife*, 504 U.S. at 561 (quotation marks omitted); *see Chamber of Commerce v. EPA*, 642 F.3d 192, 201–02 (D.C. Cir. 2011). Parties must support factual assertions by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). So the plaintiff "must set forth by affidavit or other evidence specific facts" that prove standing. *Defs. of Wildlife*, 504 U.S. at 561 (quotation marks omitted); *see Scenic Am., Inc. v. DOT*, 836 F.3d 42, 49 n.3 (D.C. Cir. 2016) ("the plaintiff has the burden to establish the evidentiary basis for its standing at the summary judgment stage").

The prior appeal in this case arose from USDA's motion to dismiss. In that context, we held that Dillenburg "alleged a plausible claim to Article III standing" because injury to his "bottom line" constituted a sufficient injury in fact, and allegations that we were bound to credit "plausibly" showed such an injury. *Humane Society II*, 797 F.3d at 8–10.

Now, on summary judgment, the plaintiffs must prove injury in fact with "specific facts" in the record. *Defs. of Wildlife*, 504 U.S. at 561. But while the plaintiffs' burden has grown, their allegations have shrunk. Dillenburg's declaration nowhere asserts a diminished return on investment, a reduced

bottom line, or any similar economic injury. Nor does it provide evidence that the Board's alleged misadventures have reduced the price of pork. Rather, Dillenburg declares that the misuse of checkoff funds robs him of the "direct economic benefit of the lawful and effective promotions to which [he is] entitled as a statutory beneficiary." J.A. 147. The briefing doubles down on this point, in contending that a bottom-line, pocketbook injury is unnecessary: "All that is needed to establish standing here is evidence that Mr. Dillenburg is a paying member of the checkoff program, who is therefore entitled to the statutorily required promotional benefit for his contributions." Humane Soc'y Br. at 30; *see also id.* at 31 ("Unlawful uses of checkoff funds cause injury to … assessment-paying producers by denying them lawful promotional programming."). The plaintiffs also pressed this theory of injury during oral argument. *See*, *e.g.*, Oral Arg. at 49:42–47 ("he's not getting the effective promotional services that the law requires"), 52:41–48 ("producers … are not getting the lawful and effective promotional services").

Dillenburg's declaration does not prove an injury in fact. Rather than show harm to his bottom line, Dillenburg instead complains that he has been deprived of a statutory entitlement to lawful promotions. But "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549. The plaintiffs must show that the statute protected "a right to be free of a harm capable of satisfying Article III." *Jeffries v. Volume Servs. Am., Inc.*, 928 F.3d 1059, 1064 (D.C. Cir. 2019). On that score, Dillenburg's declaration says little. Without elaboration, it speaks of a "direct economic benefit" that other promotions would have provided. J.A. 147. But on summary judgment, a party cannot establish standing with "conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). For that reason, in *Swanson Group Manufacturing LLC v. Jewell*,

790 F.3d 235 (D.C. Cir. 2015), we held that a declaration asserting only "economic loss and hardship," which "told nothing about the nature" of the loss, was insufficient to defeat a motion for summary judgment. *Id.* at 242–43 (quotation marks omitted). The same is true here—Dillenburg fails to elaborate on the "direct economic benefit" that he allegedly has lost because of the Board's misdeeds.

In concluding that Dillenburg proved standing, the district court reasoned that Dillenburg, as a pork producer, "is affected by the market price for pork." *Humane Society III*, 290 F. Supp. 3d at 16. Perhaps so, but Dillenburg's declaration lacks any indication that the "price for pork" was "affected" by the alleged misuse of checkoff funds. The court assumed this critical fact based on *Carpenters Industrial Council v. Zinke*, 854 F.3d 1 (D.C. Cir. 2017). *See Humane Society III*, 290 F. Supp. 3d at 16–17. Yet *Carpenters* did not displace settled law that courts cannot "presume the missing facts necessary to establish an element of standing." *Swanson*, 790 F.3d at 240 (cleaned up). To the contrary, our decision carefully combed "the complaint and declarations to assess whether the plaintiff's assertions suffice to show the elements of standing." *Carpenters*, 854 F.3d at 5. We explained that the declarations in that case identified specific "harms ranging from lost sales and diminished production to closures and layoffs." *Id.* at 9. As discussed above, Dillenburg's one-page declaration makes no similar showing.

The declaration suggests a second injury: Dillenburg "oppose[s] the misuse of checkoff funds … for the purpose of influencing legislation," because he "believe[s]" those efforts are "harmful to [him] and other independent farmers." J.A. 147. This theory of injury also falls short. Plaintiffs cannot predicate Article III standing on a "mere interest in a problem or an ideological injury." *PETA v. USDA*, 797 F.3d 1087, 1094

9

(D.C. Cir. 2015) (cleaned up). An "interest in the proper administration of the laws" is canonically "nonconcrete." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) (quotation marks omitted). Here, Dillenburg does not explain how his pork business is harmed by lobbying to promote the pork industry, let alone identify a specific lobbying activity that causes him a concrete injury. Instead, Dillenburg highlights his general opposition to the Council's lobbying and the government's funding of it. This declares "only a generally available grievance about government," which "does not state an Article III case or controversy." *Defs. of Wildlife*, 504 U.S. at 573–74.

Finally, the plaintiffs cannot salvage this case based on the possible standing of the Humane Society or Iowa Citizens. On summary judgment, neither organization filed any standing declarations or affidavits. And now in this Court, the plaintiffs do not assert the standing of these organizations as an alternative ground for reaching the merits. The plaintiffs thus have twice forfeited any claim that these organizations have standing. *See Scenic Am.*, 836 F.3d at 53 n.4 ("Although a party cannot forfeit a claim that we lack jurisdiction, it can forfeit a claim that we possess jurisdiction.").

\* \* \* \*

Because the plaintiffs offer no evidence that the Board's alleged misuse of checkoff funds caused them to suffer an injury in fact, we vacate the district court's order and remand with instructions to dismiss the case for lack of standing.

*So ordered.*