

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-19-1995

# Lyon v Whisman

Precedential or Non-Precedential:

Docket 94-7190

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Lyon v Whisman" (1995). *1995 Decisions.* Paper 14.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/14

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Nos. 94-7190 and 94-7283


PATRICIA A. LYON

v.

JAMES A. WHISMAN; Whisman & Associates, P.A.,

Appellants


PATRICIA A. LYON

v.

JAMES A. WHISMAN;
WHISMAN & ASSOCIATES, P.A.

James A. Whisman, Jr.
Whisman & Associates, P.A.,

Appellants


On Appeal from the United States District Court
for the District of Delaware
(Civil Action No. 91-289)


Argued November 1, 1994

BEFORE:  GREENBERG and McKEE, Circuit Judges,
and POLLAK, District Judge*

(Filed: January 19, 1995)
_____

Barry M. Willoughby (argued)
Bhavana Sontakay
Young, Conaway, Stargatt
& Taylor
Rodney Square North, 11th Floor

* Honorable Louis H. Pollak, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

P. O. Box 391
Wilmington, DE 19899-0391

<u>Attorneys for Appellants</u>

Fredric J. Gross (argued)
7 East Kings Highway
Mount Ephraim, NJ 08059

<u>Attorney for Appellee</u>

OPINION OF THE COURT

GREENBERG, <u>Circuit</u> <u>Judge</u>.

## I. Introduction

Patricia A. Lyon sued her employer, Whisman & Associates, an accounting firm which is a Delaware corporation, and its president James A. Whisman, in the United States District Court for the District of Delaware, charging that they failed to pay her overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a). As a matter of convenience we will refer to both defendants as Whisman. Lyon's complaint also included Delaware contract and tort claims charging that Whisman failed to pay her a promised bonus on time or in full. At trial Lyon prevailed on all three grounds. Whisman then appealed, challenging only the judgment on the tort claim. We must vacate the judgments on both of the state law claims, however, because the claims did not share a "common nucleus of operative fact" with the FLSA claim, and thus the district court lacked subject

matter jurisdiction over them supplemental to its federal question jurisdiction over the FLSA claim.[1]

We set forth the facts and the aspects of the procedural history necessary for resolution of the jurisdictional issue.[2]  Lyon began working as a bookkeeper for Whisman in January 1988 on an at-will basis for hourly wages.  Lyon and Whisman soon became embroiled in a dispute over a bonus that Whisman promised to pay Lyon at the end of 1988; by 1989 Lyon planned to find a new job.  Whisman, however, threatened to rescind the bonus if Lyon left its employment.  Although Whisman eventually did pay Lyon a bonus, she charges that the payment was late and was for less than the promised amount.

After Lyon left Whisman's employment she filed a three-count complaint alleging that it had

>  (1)  violated the FLSA, 29 U.S.C. § 207(a),
>       by failing to pay overtime wages;
>  (2)  violated Delaware contract law by paying
>       a bonus smaller than promised; and
>  (3)  violated Delaware tort law by
>       threatening to withhold a vested bonus
>       if she left its employ.

---

[1].  Since "the initial notice of appeal invokes [appellate] jurisdiction over the whole case," we properly may consider the propriety of the state contract judgment despite the fact that Whisman appealed only from the tort judgment.  United States v. Tabor Court Realty Corp., 943 F.2d 335, 344 (3d Cir. 1991), cert. denied, 112 S.Ct. 1167 (1992).

[2].  Because of procedural concerns which we need not recount, Whisman filed a notice of appeal and amended notices of appeal in a successful effort to ensure that we would have appellate jurisdiction.  We have consolidated the appeals.

The district court had federal question jurisdiction over Lyon's FLSA claim under 28 U.S.C. § 1331, and Lyon asserted that it had "pendent" federal jurisdiction over the state law claims in counts two and three. Neither the district court nor Whisman questioned this assertion of pendent jurisdiction which, in accordance with 28 U.S.C. § 1367, we usually will call supplemental jurisdiction. Since the district court did not have diversity jurisdiction, it could entertain the state-law claims only by exercising supplemental jurisdiction.

At trial Lyon won on all three counts. She recovered $731.20 on the contract claim and $5,000 in compensatory damages and $20,000 in punitive damages on the tort claim.[3] We cannot ascertain what she recovered on the FLSA claim as the docket sheets do not reflect the amount and the parties make no reference to it in their briefs. Whisman appealed only from the judgment on count three, the Delaware law tort claim. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. Discussion

Although neither the parties nor the district court questioned the court's supplemental jurisdiction over Lyon's state law contract and tort claims, we inquire into that jurisdiction on our own initiative. See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 1331 (1986).

---

[3]. The punitive damages verdict was for $75,000 but Lyon accepted a remittitur reducing the damages to $20,000.

Consequently following oral argument we directed the parties to file briefs on this point and they have done so.

### A. The Constitutional Test

Congress has authorized district courts to exercise jurisdiction supplemental to their federal question jurisdiction in 28 U.S.C. § 1367, which states:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

In Sinclair v. Soniform, Inc., 935 F.2d 599, 603 (3d Cir. 1991), we treated section 1367 as codifying the jurisdictional standard established in United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130 (1966). A leading treatise concurs: "[Section 1367] incorporates the constitutional analysis of the Gibbs case." 13B Charles A. Wright et al., Federal Practice & Procedure § 3567.1 (supp. 1994), citing, inter alia, Soniform.[4] Gibbs laid down three requirements for

---

[4]. Section 1367(c) may have modified the discretionary arm of the Gibbs decision, under which a district court may dismiss a supplemental claim notwithstanding that it has the constitutional power to entertain the claim. See LaSorella v. Penrose St. Francis Healthcare Sys., 818 F. Supp. 1413 (D. Colo. 1993). Here, however, we are concerned with the district court's power to hear the state law claims under § 1367(a), and all authority indicates that Gibbs continues to control the constitutional dimension of this jurisdictional determination.

supplemental jurisdiction.  First, "[t]he federal claim must have substance sufficient to confer subject matter jurisdiction on the court."  <u>Gibbs</u>, 383 U.S. at 725, 86 S.Ct. at 1138.  Lyon's FLSA claim satisfies this standard.

The other two requirements before federal courts may exercise supplemental jurisdiction to hear state law claims are:

> [1] The state and federal claims must derive from a common nucleus of operative facts.
> [2]  But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is <u>power</u> in federal courts to hear the whole.

<u>Id.</u>  Despite the ambiguity of the language connecting [1] the "nexus" requirement with [2] the "one proceeding" standard, all judicial authority finds that they are cumulative: state claims must satisfy <u>both</u> before a district court may exercise supplemental jurisdiction.  13B Charles A. Wright et al., Federal Practice & Procedure § 3567.1 (1984 & supp. 1994), <u>citing</u> <u>Almenares v. Wyman</u>, 453 F.2d 1075, 1083 (2d Cir. 1971), <u>cert.</u> <u>denied</u>, 405 U.S. 944, 92 S.Ct. 962 (1972); <u>Beverly Hills Nat.</u> <u>Bank & Trust Co. v. Compania De Navegacione Almirante S.A.</u>, 437

(..continued)
We do observe, however, that it is possible that even if the district court had the power to hear the supplemental claims, it abused its discretion in doing so.  Section 1367(c), <u>inter alia</u>, counsels against the exercise of jurisdiction when "the claim raises a novel or complex issue of State law," and when "the [state] claim substantially predominates over the [federal] claims . . . ."  The tort claim in this suit is both novel and complex, and it seems to have predominated at the trial.

F.2d 301, 306 (9th Cir.), cert. denied, 402 U.S. 996, 91 S.Ct. 2173 (1971). Because we find that there was an insufficient factual nexus between the federal and state claims to establish a common nucleus of operative facts, we will not consider the "one proceeding" arm of Gibbs.

## B. The Case-Specific Nature of the Inquiry

The test for a "common nucleus of operative facts" is not self-evident. Indeed, "[i]n trying to set out standards for supplemental jurisdiction and to apply them consistently, we observe that, like unhappy families, no two cases of supplemental jurisdiction are exactly alike." Nanavati v. Burdette Tomlin Memorial Hosp., 857 F.2d 96, 105 (3d Cir. 1988), cert. denied, 489 U.S. 1078, 109 S.Ct. 1528 (1989).

We can illustrate the fact-sensitive nature of supplemental jurisdiction determinations by contrasting our treatment of state defamation claims in Nanavati with our treatment of similar claims in PAAC v. Rizzo, 502 F.2d 306 (3d Cir. 1974), cert. denied, 419 U.S. 1108, 95 S.Ct. 780 (1975). In Nanavati, we found that the district court had the power to adjudicate a slander claim asserted by an antitrust defendant, noting that "a critical background fact (the enmity between the two physicians) is common to all claims." Nanavati, 857 F.2d at 105. We concluded that the alleged slanders naturally would become part of the antitrust trial since the slander victim might use the slanderer's allegedly wrongful behavior to justify the victim's conduct which the other party contended was actionable

under the antitrust laws. Id. at 105-06. In PAAC, however, we ruled that the district court lacked jurisdiction over a state defamation claim in a suit brought under the Economic Opportunity Act charging the defendant with unlawfully interfering with the agency established under that law. In PAAC we recited the operative language of Gibbs and found that the state claims were not related sufficiently to the federal claim to permit the exercise of pendent jurisdiction.

The line that separates Nanavati and PAAC is Article III of the Constitution. Both cases fall near the line; one is on one side, the other is on the other side. In most instances the question whether Article III is satisfied is not that close. For example, when the same acts violate parallel federal and state laws, the common nucleus of operative facts is obvious and federal courts routinely exercise supplemental jurisdiction over the state law claims. See, e.g., Pueblo Int'l, Inc. v. De Cardona, 725 F.2d 823, 826 (1st Cir. 1984) (finding jurisdiction over claims under Puerto Rico constitution, civil rights laws, and antitrust laws where federal jurisdiction was established under parallel laws, observing that "[t]he facts necessary to prove a violation of one are practically the same as those needed to prove a violation of the other").

Thus, district courts will exercise supplemental jurisdiction if the federal and state claims "are merely alternative theories of recovery based on the same acts," Lentino v. Fringe Employee Plans, Inc., 611 F.2d 474, 479 (3d Cir. 1979). In Lentino, for instance, we recognized that there was federal

jurisdiction over a state legal malpractice claim joined with an ERISA claim because the alleged malpractice involved precisely the same acts that the plaintiffs charged constituted a breach of fiduciary duties under ERISA. In White v. County of Newberry, 985 F.2d 168 (4th Cir. 1993), landowners sued the county for "response costs" under CERCLA and for inverse condemnation, claiming that the county's discharge of toxic waste into groundwater and wells effectively took their property. In sustaining the exercise of supplemental jurisdiction over the state law inverse condemnation claim, the court said that "[b]oth claims share the common element of showing that the County engaged in an act —— a release [CERCLA language] or an affirmative, positive, aggressive act [South Carolina inverse condemnation language] —— that in this case would be the dumping or disposal of [a toxin] in a manner that caused contamination . . . ." Id. at 172. Two areas in which the federal courts quite commonly exercise supplemental jurisdiction based on "alternative theories of recovery based on the same acts" are state fraud claims in securities cases[5] and state assault claims in civil rights suits charging police abuses.[6]

---

[5]. See Klaus v. Hi-Shear Corp., 528 F.2d 225 (9th Cir. 1975); Vanderboom v. Sexton, 422 F.2d 1233 (8th Cir.) cert. denied, 400 U.S. 852, 91 S.Ct. (1970); First Interregional Equity Corp. v. Haughton, 805 F. Supp. 196 (S.D.N.Y. 1992); In re Storage Technology Corp. Sec. Litig., 804 F. Supp. 1368 (D. Colo. 1992); Bowman v. Hartig, 334 F. Supp. 1323 (S.D.N.Y. 1971).

[6]. See Chudzik v. City of Wilmington, 809 F. Supp. 1142 (D. Del. 1992); Stewart v. Roe, 776 F. Supp. 1304 (N.D. Ill. 1991).

On the other hand, we have refused to exercise supplemental jurisdiction over state claims totally unrelated to a cause of action under federal law.  For instance, in Local No. 1 (ACA) v. International Bhd. of Teamsters, 614 F.2d 846 (3d Cir. 1980), we found the district court powerless to try a state-law salary dispute when federal jurisdiction arose from a union merger dispute actionable under the Labor Management Relations Act ("LMRA").  We reasoned that "the merger and salary claims are factually distinct and do not meet the test enunciated in United Mine Workers v. Gibbs . . . . [The two are] not derived 'from a common nucleus of operative facts.'"  Id. at 851-52.

As might be expected there are closer cases than those we have described.  Furthermore, the courts have not been consistent in defining the nexus between the federal and state claims necessary to support supplemental jurisdiction in these closer cases.  Thus, some courts have stated that even a "loose" nexus is enough.  Frye v. Pioneer Logging Machinery, Inc., 555 F. Supp. 730, 732 (D.S.C. 1983); Ritter v. Colorado Interstate Gas Co., 593 F. Supp. 1279, 1281 (D. Colo. 1984).  But at least one court strongly and explicitly has rejected this loose nexus test, finding that it expands judicial power beyond the limits set by Article III of the Constitution.  Mason v. Richmond Motor Co., 625 F. Supp. 883, 886 (D. Va. 1986), aff'd, 825 F.2d 407 (4th Cir. 1987) (table).  Numerous other decisions implicitly reject the loose nexus test.[7]  Here we see no need to define how close

---

[7].  Sanders v. Duke Univ., 538 F. Supp. 1143, 1147-48 (M.D.N.C. 1982); Klupt v. Blue Island Fire Dep't, 489 F. Supp. 195, 197-98

the nexus between the federal and state claims must be to support the exercise of supplemental jurisdiction for, as we will demonstrate, under any standard the nexus between the federal and state claims in this case is inadequate for that purpose.

### C. Implications of the Employer/Employee Nexus

Congress has the power to limit the jurisdiction of the inferior federal courts.  See Lauf v. E.G. Shinner & Co., 303 U.S. 323, 330, 58 S.Ct. 578, 582 (1938).  Thus, we do not doubt but that Congress could have provided expressly that district courts could not exercise supplemental jurisdiction in FLSA cases.  The statute, however, does not mention the scope of supplemental jurisdiction which a court should exercise.  Thus, we assume in this section that Congress wished a court in an FLSA action to exercise supplemental jurisdiction to the limit permitted by Article III of the Constitution.[8]  Even under such an assumption, we find that there is an insufficient nexus

(..continued)
(N.D. Ill. 1980); Madery v. International Sound Technicians, Local 695, 79 F.R.D. 154, 156-57 (C.D. Cal. 1978).

[8].  Under one construction of section 1367, it is possible to argue that Congress mandated such an assumption.  By using the word "shall" in section 1367(a), the argument goes, Congress created a default rule that, absent specific language to the contrary, federal district courts should exercise supplemental jurisdiction to the maximum extent permitted under Article III (subject to the district court's discretion, delineated in section 1367(c)).  Gibbs contained no such presumption, so this argument would bring into question our assumption in Sinclair v. Soniform, supra, that section 1367 merely codified the constitutional arm of the Gibbs decision.

between Lyon's federal FLSA claim and her Delaware claims to justify supplemental jurisdiction over the latter.

The only link between Lyon's FLSA and state law claims is the general employer-employee relationship between the parties. In Prakash v. American Univ., 727 F.2d 1174 (D.C. Cir. 1984), the court seemingly found such a relationship sufficient to confer supplemental jurisdiction over state claims. In Prakash a terminated professor sued his former employer, asserting FLSA claims as well as state law claims for breach of contract, interference with contractual relations, conversion, deceit, and defamation. In finding that the district court had jurisdiction over the state law claims, the court of appeals said that "[t]he federal and nonfederal claims [plaintiff] advances 'derive from a common nucleus of operative facts' —— [the plaintiff's] contract dispute with the university . . . ." Id. at 1183.

Arguably Prakash is factually distinguishable from this case. Fairly read, however, we believe that Prakash stands for the proposition that FLSA plaintiffs can try all state law contract claims against their employers in a federal proceeding, as the employment relationship alone provides a factual nexus sufficient to confer supplemental jurisdiction.

Yet there is virtually no support for this broad reading of the reach of Article III and of Gibbs.[9] In Hales v.

_____

[9]. We note that even under the opinion of the Prakash court it might be found that the district court lacked jurisdiction over Lyon's state tort claim, inasmuch as the Prakash court predicated its finding that there was federal jurisdiction on the nexus

Winn–Dixie Stores, Inc., 500 F.2d 836 (4th Cir. 1974), the court ruled that it could not entertain a state-law claim for failure to make payments from a profit-sharing plan despite the factual link to a federal claim under the Welfare and Pension Plans Disclosure Act, 29 U.S.C. § 301 et seq. (repealed), charging that a plan administrator failed to provide statutorily required information.  The factual nexus in Winn–Dixie, where both claims revolved around a specific area of employer-employee relations, presents stronger grounds for jurisdiction than cases based solely on the general employment relationship.  Nonetheless, the court found that:

> [t]he record establishes beyond doubt that the [two counts] do not grow out of a 'common nucleus of operative facts' [citing Gibbs] . . . .  While plaintiffs may have sought [the federally mandated] information in order to consider and/or assert their [state law] claims, their causes of action under both Counts I and II are separately maintainable and determinable without any reference to the facts alleged or contentions stated in or with regard to the other count.  Id. at 847–48.

District courts have resisted expanding supplemental jurisdiction based merely on an employment contract in a variety of federal statutory settings.  Thus, in both Nicol v. Imagematrix, Inc., 767 F. Supp. 744 (E.D. Va. 1991), and Benton

(..continued)
between the federal and state claims created by the employment relationship.  Nevertheless, because we find the Prakash decision unconvincing, we do not analyze the difference between supplemental jurisdiction based on the nature of the claim, be it tort or contract.  In both cases, we question the existence of a sufficient factual nexus to confer jurisdiction.

v. Kroger Co., 635 F. Supp. 56 (S.D. Tex. 1986), the courts refused to permit plaintiffs to use Title VII discrimination suits, combined with their status as employees, to bootstrap state claims into federal court. In declining to entertain state contract and fraud claims in a sexual discrimination suit, Nicol pointedly noted that the sole common fact between the state and federal claims was the employment relationship. Nicol, 767 F. Supp. at 747. In Benton, the plaintiff contended that her employer fired her either as an act of sexual discrimination or in retaliation for her having filed a worker's compensation claim. The court refused to consider the state law retaliation claim, finding that "[a]lleged incidents of sexual harassment or gender bias were entirely separate from the circumstances surrounding plaintiff's back injury. These separate events can hardly be grouped as the 'common nucleus of operative facts . . . .'" Benton, 635 F. Supp. at 59.

District courts similarly have found that they did not have supplemental jurisdiction to entertain a variety of state claims in age discrimination cases. In Mason v. Richmond Motor Co. the court concluded it could not exercise supplemental jurisdiction over a state law breach of contract claim (based on an oral promise that the defendant would never fire the plaintiff) in an ADEA wrongful discharge suit. The court, applying Gibbs, found that "[o]nly one fact is common to both the federal and state claims; and that is that plaintiff was fired by his employer." 625 F. Supp. at 888. In Robinson v. Sizes Unlimited, Inc., 685 F. Supp. 442 (D.N.J. 1988), another ADEA

case, the court exercised supplemental jurisdiction over state age discrimination claims, but concluded that it could not entertain a state claim predicated on discrimination against a plaintiff because of a handicap.

We find these precedents compelling. Lyon's FLSA claim involved very narrow, well-defined factual issues about hours worked during particular weeks. The facts relevant to her state law contract and tort claims, which involved Whisman's alleged underpayment of a bonus and its refusal to pay the bonus if Lyon started looking for another job, were quite distinct. In these circumstances it is clear that there is so little overlap between the evidence relevant to the FLSA and state claims, that there is no "common nucleus of operative fact" justifying supplemental jurisdiction over the state law claims. In fact, it would be charitable to characterize the relationship of the federal and state claims as involving even a "loose" nexus. Thus, Article III bars federal jurisdiction.

### D. Congressional Intent Under the FLSA

We have assumed up to this point that Congress intended district courts in FLSA actions to exercise supplemental jurisdiction subject only to the limits of Article III; even so, we have concluded that the district court did not have the power to hear Lyon's contract and tort claims. In addition, we question whether Congress intended courts in FLSA actions have such broad jurisdiction. In its "declaration of policy" for the FLSA, Congress found that existence of "labor conditions

detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers" caused harm to interstate commerce.  29 U.S.C. § 202. Accordingly, its "declared policy" under the FLSA was "to correct and as rapidly as practicable to eliminate [these] conditions." Id.

The Supreme Court has stated that "[t]he central aim of the [FLSA] was to achieve . . . certain minimum labor standards." Mitchell v. Robert De Mario Jewelry, Inc., 361 U.S. 288, 292, 80 S.Ct. 332, 335 (1960).  The substantive sections of the FLSA, narrowly focusing on minimum wage rates and maximum working hours, bear out its limited purposes.  Accordingly, we find no indication that Congress passed the FLSA with the expectation that it was authorizing federal courts to exercise far-reaching jurisdiction over state-law disputes arising from employment relationships.  This restrained view of the scope of federal jurisdiction is consistent with the Supreme Court's statement that "[i]n the Fair Labor Standards Act, Congress did not intend that the regulation of hours and wages should extend to the furthest reaches of federal authority."  McLeod v. Threlkeld, 319 U.S. 491, 493, 63 S.Ct. 1248, 1249 (1943).

We do not mean to imply that a district court never may exercise supplemental jurisdiction over state claims in an FLSA action.  For example, an employee seeking to enforce an employment contract granting hourly wages in excess of the (statutorily required) time and a half probably could assert her state law contract claim on a supplemental jurisdictional basis

along with her FLSA claim in a district court, since the "operative facts" in the two claims would be identical. But still, when a court exercises federal jurisdiction pursuant to a rather narrow and specialized federal statute it should be circumspect when determining the scope of its supplemental jurisdiction. Accordingly, Congressional intent may provide a second, non-constitutional ground for finding that the district court did not have jurisdiction over Lyon's state law claims.[10]

### III. Conclusion

Because we find that the district court lacked subject matter jurisdiction over Lyon's state law contract and tort claims, we will vacate its judgments on those two counts and remand the matter with instructions to dismiss those claims without prejudice. Of course, the district court did have jurisdiction over Lyon's FLSA claim, and our decision does not disturb the judgment on that count. The parties will bear their own costs on this appeal.

---

[10]. While our result may seem harsh as this case was tried without jurisdictional objection in the district court, we point out that in all likelihood Lyon will be able to file her state law claims in the Delaware state courts without being barred by the statute of limitations. See Frombach v. Gilbert Assocs., Inc., 236 A.2d 363 (Del. 1967); Houmet Corp. v. City of Wilmington, 285 A.2d 423 (Del. Super. Ct. 1971). However, our conclusion is not dependent on that belief.