# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 22, 2024          Decided May 7, 2024

No. 22-5321

JENNIFER SEED,
APPELLANT

v.

ENVIRONMENTAL PROTECTION AGENCY AND UNITED STATES
OF AMERICA,
APPELLEES

———

Appeal from the United States District Court for
the District of Columbia
(No. 1:16-cv-00748)

———

*Mark Ramsey Heilbrun* argued the cause and filed the briefs for appellant.

*Joshua M. Koppel*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Melissa N. Patterson*, Attorney.

Before: RAO and CHILDS, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court by *Senior Circuit Judge* ROGERS.

ROGERS, *Senior Circuit Judge*: Dr. Jennifer Seed, a longtime employee of the Environmental Protection Agency, retired in 2014 following a reorganization of her division. She appeals the grant of summary judgment on her age discrimination claim, contending principally that the district court erred as a matter of fact and law in view of the evidence that she was involuntarily demoted to a junior position as older managers were replaced with younger employees. The court does not have jurisdiction to address the merits of Dr. Seed's reassignment claims because she lacks standing under Article III of the United States Constitution whereby a court could likely redress her claimed injuries. The appeal is therefore dismissed and the case remanded to the district court with instructions to vacate the grant of summary judgment and to dismiss the reassignment claim for lack of standing.

## I.

"Federal courts are courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and have "an independent obligation to determine jurisdiction de novo." *Waters v. Rumsfeld*, 320 F.3d 265, 271 (D.C. Cir. 2003).

"[T]he party invoking federal jurisdiction [must] have standing — the 'personal interest that must exist at the commencement of the litigation.'" *Davis v. FEC*, 554 U.S. 724, 732 (2008) (quoting *Friends of the Earth, Inc. v. Laidlaw*

*Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). The "irreducible constitutional minimum of standing" has three requirements: (1) an "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) it "must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and quotations omitted). If a plaintiff lacks any one of these elements of standing, the court lacks jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109–10 (1998).

The plaintiff bears the burden to establish each element of standing "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Humane Soc'y of the U.S. v. Perdue*, 935 F.3d 598, 602 (D.C. Cir. 2019) (quoting *Defs. of Wildlife*, 504 U.S. at 561). At the summary judgment stage, FED. R. CIV. P. 56, the plaintiff cannot "'rest on . . . "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," which for purposes of the summary judgment motion will be taken to be true.'" *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015) (alteration in original) (quoting *Defs. of Wildlife*, 504 U.S. at 561 (quoting FED. R. CIV. P. 56(e))).

## II.

From 2009 until her reassignment in 2013, Dr. Seed was the Deputy Division Director in the Office of Pollution Prevention and Toxics, Risk Assessment Division of the Environmental Protection Agency ("EPA"). She had served as Branch Chief from 1998, and in both positions she had dual roles as a senior scientist and a manager. As Deputy her duties

covered science functions, including being a task force representative and working with the World Health Organization, while directing and overseeing program planning, staffing requirements, and human resources functions. Certain managerial functions, such as the budget, tended to be handled by an associate division director, and Dr. Seed had no direct supervision of employees.

In 2013, EPA reorganized the Office of Pollution Prevention and Toxics. It combined the risk assessment components of each of the Office's seven divisions, disbanded two divisions, and created a new division. As in other divisions, the Deputy Division Director would have primary responsibilities for administrative and procedural functions such as contract management and oversight, program implementation, FOIA responses and tracking, personnel actions and procedures, and travel planning and oversight. Ninety-one positions were reassigned.

Dr. Tala Henry, who was slated to be the Division Director of the reconstituted Risk Assessment Division, met with the affected managers in developing a staffing plan. During a meeting with Dr. Seed in July 2013, Dr. Henry advised that the newly reconstituted Deputy Division Director position would have "primary managerial responsibilities related to administrative and procedural functions." Henry EEOC Aff. ¶ 27 (Apr. 22, 2014). Upon inquiring whether Dr. Seed would be interested in these administrative duties, Dr. Seed "adamantly responded 'no.'" *Id.* Dr. Seed disputed this, stating that she had told Dr. Henry she "did not want to do budget as a full-time job, and that it was a disservice to a science Division to have a Deputy Division Director focus solely on budget." Seed EEOC Aff. ¶ 28 (May 20, 2014). In response to Dr.

Henry's August 2013 email to managers on available management positions, Dr. Seed identified the newly constituted Deputy Division Director as her top choice for reassignment, followed by the non-supervisory Senior Science Advisor.

Dr. Seed, then 59 years old, was reassigned to be the Senior Science Advisor. A man about five years younger who was a Branch Chief was selected as the new Deputy Division Director. Dr. Henry explained to Dr. Seed that she was selected for the Senior Science Advisor position because she had indicated she was "not interested" in the budgetary and logistical duties of the Deputy Division Director, which she thought were "not the best application of [her] scientific expertise and experience." Henry Email to Seed (Oct. 22, 2013). According to Dr. Seed, when she inquired about the Branch Chief position to be vacated by the new Deputy Director, Dr. Henry told her that "[w]e were hoping to fill those [positions] with younger people who had just been through the leadership training program." Seed Dep. at 37:21–23 (Nov. 29, 2017). Dr. Henry denied making this statement. Henry EEOC Aff. ¶¶ 31–32 (Apr. 22, 2014).

As Senior Science Advisor, Dr. Seed retained the same pay grade and benefits she had as Deputy Division Director. Dr. Seed averred, however, that the reassignment to Senior Science Advisor limited her future professional advancement in the federal government, and it was humiliating and a demotion. Seed EEOC Aff. ¶¶ 27, 32 (Apr. 9, 2014). For instance, she was no longer invited to meetings on science and policy matters with senior managers. Her office was relocated to a cubicle. When senior managers walked by they did "not even bother to say hello." Seed Dep. at 65:12–13 (Nov. 29, 2017). Moreover,

the selection process during the reorganization was unfair, differing without reason, as she illustrated: the reconstituted Deputy Division Director position required neither a formal application nor any interviews, while a one-year, less senior Branch Chief position (for which she applied, was offered, and declined) required a formal application and two rounds of interviews.  Seed EEOC Aff. ¶ 37 (May 20, 2014).

Dr. Seed's reassignment as Senior Science Advisor was effective on November 17, 2013.  A little over a year later, on December 27, 2014, she retired under the Voluntary Separation Incentive Payments program, 5 U.S.C. §§ 3521–3525 (2014), and received a $25,000 lump-sum separation incentive payment from EPA.

Dr. Seed filed complaints with EPA's Office of Civil Rights and appealed to the Equal Employment Opportunity Commission and the Merit Systems Protection Board.  Failing to obtain relief, she filed suit against EPA on April 21, 2016, alleging violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*  Although her claims overlap, Count I alleged constructive discharge, constructive demotion, and also disparate treatment and a continuing hostile work environment; Count II alleged *de jure* discrimination beginning in 2012–13 targeting her as well as older, more experienced employees and subjecting them to prohibited employment practices; Count III alleged disparate impact; Count IV alleged a continuing hostile work environment; and Count V alleged retaliation based on her previous protected activity challenging discriminatory policies and participating in a civil rights violation investigation.  As relief, Dr. Seed sought reinstatement with a

retroactive promotion, $300,000 in compensatory damages, front pay, costs and reasonable attorneys' fees, and "other damages and further relief as deemed just and reasonably calculated to make [her] whole." Compl. at 37; *id*. at 38–39.

On July 19, 2016, EPA moved to dismiss the complaint in part for lack of timely exhaustion of administrative remedies, FED. R. CIV. P. 12(b)(6). The district court dismissed the constructive demotion claim in Count I, the constructive discharge claim in Count II, and the retaliation claim in Count V. *Seed v. Pruitt*, 246 F. Supp. 3d 251, 257 (D.D.C. 2017) ("*Seed I*"). Following discovery, EPA moved on January 12, 2018, for summary judgment on the remaining claims, attaching a statement of material facts not in dispute. FED. R. CIV. P. 56(c), (e), (f); D.C. LOCAL CIV. R. 7(h)(1). Dr. Seed filed an opposition but did not include record citations nor file a statement of material facts in dispute. The district court dismissed the Title VII claim for failure to state a claim pursuant to Rule 12(b)(6), and granted summary judgment to EPA on Count III (disparate impact) and Count IV (hostile work environment). Supp. Order (Feb. 11, 2019). Upon receiving supplemental briefs on the remaining reassignment claim, including whether Dr. Seed could obtain any form of relief other than nominal damages, the district court, on November 30, 2022, granted summary judgment to EPA on Dr. Seed's remaining reassignment and disparate treatment ADEA claims in Count I. *Seed v. Regan*, 643 F. Supp. 3d 129, 140 (D.D.C. 2022) ("*Seed II*"). The court observed that Dr. Seed had proffered neither direct evidence of discriminatory intent that would entitle her to a trial, nor indirect evidence giving rise to an inference of discrimination, nor shown that after her reassignment she was treated less favorably than younger employees or that her treatment was based on her age. *Id.* at

137–40. Dr. Seed appeals only her ADEA reassignment claim that was the subject of the Order and Memorandum Opinion in *Seed II*.

## III.

As a threshold matter, EPA maintains that Dr. Seed has failed to establish Article III standing to pursue her claims and her case must be dismissed for lack of jurisdiction. Appellees' Br. 18–27.

This court's analysis "begins and ends with consideration of our jurisdiction." *Swanson Grp. Mfg. LLC*, 790 F.3d at 239. Dr. Seed's case fails on the element of redressability, which "poses a simple question: '[I]f plaintiffs secured the relief they sought, . . . would [it] redress their injury'?" *Wilderness Soc'y v. Norton*, 434 F.3d 584, 590 (D.C. Cir. 2006) (alterations in original) (quoting *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1233 (D.C. Cir. 1996)). To proceed, the court must have the power to issue relief that is likely to redress the plaintiff's injury. *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018); *see Swan v. Clinton*, 100 F.3d 973, 976–77 (D.C. Cir. 1996).

Dr. Seed's cause of action arises under the federal-sector provision of the ADEA, 29 U.S.C. § 633a, which provides: "All personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age." *Id.* § 633a(a). A person "may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter." *Id.* § 633a(c). Congress authorized EEOC "to enforce the provisions of

subsection (a) through appropriate remedies, including reinstatement or hiring of employees with or without backpay, as will effectuate the policies of this section." *Id.* § 633a(b). The ADEA was modeled after Title VII of the Civil Rights Act of 1964, *see, e.g.*, *Lehman v. Nakshian*, 453 U.S. 156, 166–67 (1981), but it is not identical in relevant respects.

The federal-sector provision of the ADEA generally permits plaintiffs to seek reinstatement, backpay, or injunctive or declaratory relief. *See Steele v. Mattis*, 899 F.3d 943, 945 (D.C. Cir. 2018). In 1991, Congress amended Title VII to allow recovery of compensatory and punitive damages. Civil Rights Act of 1991, Pub. L. No. 102-166, § 102, 105 Stat. 1071, 1072–74 (codified as amended at 42 U.S.C. § 1981a). Congress amended other anti-discrimination statutes but did not similarly amend the ADEA. *Villescas v. Abraham*, 311 F.3d 1253, 1260 (10th Cir. 2002)*; see Smith v. City of Jackson*, 544 U.S. 228, 240 (2005).

In her complaint, Dr. Seed sought reinstatement "with a retroactive promotion to the [Senior Executive Service ("SES")] level or some equivalent grade and pay band commensurate with her experience and expertise, with all attendant back pay, benefits and other properly-offset emoluments of employment," as well as $300,000 in compensatory damages, "front pay at the SES (Level III) pay level (including [] increases) until [Dr. Seed] reaches an age when she would have voluntarily retired from federal service," costs and reasonable attorneys' fees, and "other damages and further relief as deemed just and reasonably calculated to make [her] whole." Compl. at 37. Dr. Seed has not proffered evidence or presented legal argument to demonstrate that her requested remedies would redress her injuries. As a matter of

law she has not shown that compensatory damages are available to her under the ADEA.

**A.**

A backpay award consists of "the difference between what the employee would have earned but for the wrongful discharge and [her] actual interim earnings." *Oil, Chem. & Atomic Workers Int'l Union v. NLRB*, 547 F.2d 598, 602 (D.C. Cir. 1976) (citing *Heinrich Motors, Inc. v. NLRB*, 403 F.2d 145, 148 (2d Cir. 1968)). Dr. Seed's counsel referred to an Office of Personnel Management manual purporting to authorize backpay for "creditable service until age 70," Oral Arg. Rec'd'g at 9:44–10:00 (Jan. 22, 2024), but nothing in the record or briefing reflects the existence or applicability of this policy. Dr. Seed acknowledged that as Senior Science Advisor she had the same pay grade, salary, vacation, and other benefits that she had as Deputy Division Director prior to her reassignment. She has presented no ground on which the court could find any difference in earnings or benefits to compensate as backpay.

**B.**

Nor has Dr. Seed shown that she is eligible for reinstatement or front pay. Wrongful discharge, either actual or constructive, is "a necessary element of a claim for reinstatement." *Taylor v. FDIC*, 132 F.3d 753, 767 (D.C. Cir. 1997). Dr. Seed retired under the Voluntary Separation Incentive Program and received a lump sum incentive payment from EPA. 5 U.S.C. §§ 3521–3525 (2014). She did not appeal the Rule 12(b)(6) dismissal of three counts and attempts for the first time on appeal to present challenges that have been forfeited, *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019), or are unavailable. Her notice of appeal referred only to the district court's order and opinion of November 30, 2022, and

her opening brief states that these are the rulings under review, Appellant's Br. i, 2. Having forfeited challenges to other district court orders — most notably the Rule 12(b)(6) dismissal of her constructive discharge claim — by failing to refer to it in her opening brief, her claims have not been preserved for appeal.

Nor can the court address her front pay claim. Even assuming the Rule 12(b)(6) dismissal was part of her intended appeal, *see Messina v. Krakower*, 439 F.3d 755, 759 (D.C. Cir. 2006), Dr. Seed did not address the issue of front pay in her opening (or reply brief), and EPA did not address the issue in the response brief.

## C.

Dr. Seed fares no better in seeking injunctive or declaratory relief. She cannot receive injunctive relief because there is no record evidence that she plans to return to EPA or is currently working there, so no "present harm [is] left to enjoin," *Taylor v. Resol. Tr. Corp.*, 56 F.3d 1497, 1502 (D.C. Cir. 1995). Similarly, in seeking declaratory relief, the record indicates that it is "'most unlikely' that [she] would again be subject to the [ADEA] . . . [and so there is] no case or controversy of 'sufficient immediacy and reality' . . . to allow a declaratory judgment." *City of Los Angeles v. Lyons*, 461 U.S. 95, 104 (1983) (quoting *Golden v. Zwickler*, 394 U.S. 103, 109 (1969)); *see Fair Emp. Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1273 (D.C. Cir. 1994). She thus has not proffered evidence nor shown either remedy is available to her.

## D.

Finally, Dr. Seed's request for compensatory damages is not well taken.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). A federal government waiver "must be unequivocally expressed in statutory text, *see, e.g.*, *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992), and will not be implied, *Lane v. Pena*, 518 U.S. 187, 192 (1996)." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1105 (D.C. Cir. 2005). Courts, in turn, must "strictly construe[]" a waiver of sovereign immunity "in terms of its scope, in favor of the sovereign." *Lane*, 518 U.S. at 192. When a plaintiff seeks monetary damages, "the waiver of sovereign immunity must extend unambiguously to such monetary claims." *Id.*; *see Settles*, 429 F.3d at 1105.

The ADEA authorizes "appropriate remedies, including reinstatement or hiring of employees with or without backpay." 29 U.S.C. § 633a(b). Congress's use of the word "including" can be understood to "introduce[] examples, not an exhaustive list." A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 132 (2012). But Dr. Seed presents no persuasive argument this canon would apply to sovereign immunity. Her generalizations and atextual analysis do not identify the specificity that the Supreme Court requires for such waivers. *E.g.*, *Lane*, 518 U.S. at 192.

The federal-sector provision of the ADEA does waive the United States' sovereign immunity for certain federal employers by providing for "legal or equitable relief" to carry out the purposes of the ADEA. 29 U.S.C. § 633a(c). Dr. Seed, citing *Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008), views this broad statement to waive sovereign immunity for monetary

damages. Reply Br. 12–13. Yet other courts, in analyzing disputes over the availability of compensatory damage awards, have concluded that in affording "legal or equitable relief," 29 U.S.C. § 633a(c), Congress did not unequivocally, unambiguously waive sovereign immunity for compensatory or punitive damages under the federal-sector provision of the ADEA. *See, e.g.*, *Villescas*, 311 F.3d at 1259–61; *Smith v. Off. of Pers. Mgmt.*, 778 F.2d 258, 260–62 (5th Cir. 1985); *Miller v. Kerry*, 924 F. Supp. 2d 133, 138–40 (D.D.C. 2013). In her Reply Brief at 12–16, Dr. Seed argued that the ADEA provides for compensatory damages by its plain text and "unequivocally" waives the United States' sovereign immunity, but acknowledged at oral argument that the ADEA does not provide an explicit waiver of sovereign immunity for compensatory damages. Oral Arg. Rec'd'g at 5:04–28 (Jan. 22, 2024).

Dr. Seed relies principally on *Babb v. Wilkie*, 589 U.S. 399 (2020), to support her claim for compensatory damages under the ADEA. There, the Supreme Court stated in *dictum* that a plaintiff may obtain relief that is "generally available for a violation of § 633a(a), including hiring, reinstatement, backpay, and compensatory damages," if the plaintiff shows that "age was a but-for cause of the challenged employment decision." *Id.* at 402. No claim for compensatory damages was before the Court. Nor did the Court address the United States' waiver of sovereign immunity under the ADEA. Instead, the Court assumed without deciding that compensatory damages were available. *Id.* at 413. A bare assumption is not the type of "carefully considered language of the Supreme Court" that this court considers authoritative for purposes of applying Supreme Court dictum. *Zivotofsky ex rel. Zivotofsky v. Sec'y of State*, 725 F.3d 197, 211–12 (D.C. Cir. 2013) (quoting

*United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006)), *aff'd sub nom. Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1 (2015).

No more persuasive is Dr. Seed's suggestion that EPA "appears to impute" sovereign immunity in a manner that the Supreme Court has abandoned.  Reply Br. 12.  She interprets *Gomez-Perez*, 553 U.S. at 491, to instruct that "where one statutory provision unequivocally provides for a waiver of sovereign immunity to enforce a separate statutory provision, that latter provision 'need not . . . be construed in the manner appropriate to waivers of sovereign immunity.'"  Reply Br. 12. In *Gomez-Perez*, the Court concluded that a provision of the federal-sector ADEA outlawing discrimination did not need to be analyzed in the same manner as a statutory provision that provided for a waiver of sovereign immunity.  553 U.S. at 490–91 (citing *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472–73 (2003)).  Dr. Seed offers no explanation why that reasoning would apply in her case.  A sovereign immunity waiver must be explicit in the applicable statutory provision, *Lane*, 518 U.S. at 192, and the court must strictly construe the waiver in 29 U.S.C. § 633a(c) in the United States' favor, *see id.*

Accordingly, because Dr. Seed lacks Article III standing, the court dismisses the appeal for lack of jurisdiction and remands the case to the district court to vacate the grant of summary judgment and to dismiss the reassignment claim in Count I for lack of jurisdiction.