# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 25-7002**

**September Term, 2025**

FILED ON: MAY 12, 2026

XUNXIAN LIU,

      APPELLANT

v.

GEORGETOWN UNIVERSITY,

      APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-00157)

---

Before: MILLETT, WILKINS, and GARCIA, *Circuit Judges*.

## J U D G M E N T

The cause came to be heard on the record on appeal from the United States District Court for the District of Columbia and on the briefs of the parties. The panel has accorded these issues full consideration and decided that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons stated below, it is hereby

**ORDERED** and **ADJUDGED** that the judgment of the United States District Court for the District of Columbia be **AFFIRMED**.

\*      \*      \*

Dr. Xunxian Liu, a biomedical researcher formerly employed by Georgetown University (the "University"), brought an action against the University alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 1981 ("Section 1981"), and the District of Columbia Human Rights Act ("DCHRA"), as well as related constitutional claims arising from his employment in Dr. Alexander Kroemer's laboratory. The District Court granted the University's motion for judgment on the pleadings and dismissed all the claims against the University. Dr. Liu filed a motion for reconsideration, which the District Court denied.

At the judgment on the pleadings stage, we must view the allegations in the light most

favorable to Dr. Liu as the non-moving party, granting him all reasonable inferences. *See Schuchart v. La Taberna Del Alabardero, Inc.*, 365 F.3d 33, 34 (D.C. Cir. 2004). We hold that the District Court erred in conducting its comparator analysis for the claims of national-origin discrimination when it held Dr. Liu to the stricter standard that applies at the summary-judgment stage, rather than the pleading standard that applies at the motion-to-dismiss stage. *See Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 530–31 (D.C. Cir. 2025). Nonetheless, we conclude that, applying the proper standard, Dr. Liu has failed to state a claim that the University unlawfully discriminated and retaliated against him based on his national origin. Dr. Liu's remaining claims also fail for reasons of inadequate pleading, lack of exhaustion, or lack of redressability. We therefore affirm the District Court's dismissal of all Dr. Liu's claims. We further hold that the District Court did not abuse its discretion in denying Dr. Liu's motion for reconsideration.

## I.

### A.

The Court draws the following facts from Dr. Liu's Second Amended Complaint, which are accepted as true for purposes of this appeal. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This Court will also consider documents that are referred to in the Complaint and his filings as "integral" to Plaintiff's claims. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) (quoting *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004)); *see, e.g., Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) ("We have previously held that a district court errs in failing to consider a *pro se* litigant's complaint "in light of" all filings, including filings responsive to a motion to dismiss.") (internal citations omitted).

Dr. Xunxian Liu is a Chinese-born biomedical sciences researcher who came to the United States at age 36 to pursue a Ph.D. in biomedical sciences. Dr. Liu began working at Georgetown University in January 2017 as a temporary Research Specialist, in the lab of Dr. Alexander Kroemer, M.D., a transplant surgeon and the Scientific Director of the Center for Translational Transplant Medicine. He was hired as a Research Associate in April 2019, a term position under the supervision and research funding of Dr. Kroemer. His position was at-will and subject to a three-month probationary period.

In the laboratory, Dr. Liu worked alongside two other employees, Dr. Katrina Loh, M.D. and Dr. Jiman Kang, Ph.D. Dr. Loh is a female medical fellow from Malaysia, roughly 33 years old whose fellowship was funded by the Children's Medical Center Hospital. Dr. Loh was hired in July 2018, a little under a year prior to Dr. Liu being hired into a term position. Dr. Kang is a male research assistant from South Korea who was "not [yet] 40" years old, whose position was also funded by Dr. Kroemer's research funding. He was hired in April 2017, around two years prior to Dr. Liu being hired into a term position.

There are four incidents that are central to Dr. Liu's discrimination and retaliation claims: (i) Dr. Loh's alleged first authorship of a study and her presentation of Dr. Liu's data at two conferences, (ii) Dr. Kroemer's failure to seek Dr. Liu's permission for Dr. Loh to present his data,

(iii) Dr. Liu's termination, and (iv) his post-employment efforts to obtain research data from the University. First, Dr. Liu claims that in 2019 Dr. Loh presented an abstract and a poster containing "[his]-produced data" and that "[his] ideas [were a] major contribution[] to the presentation[.]" JA0109. He alleges that Dr. Loh's presentations "seriously damage[d] [his] rights/privileges associated with [his] position in the lab" because he should have presented the data and been listed as the first author based on his individual contributions. JA0109. Dr. Liu alleges that selecting Dr. Loh to present was discriminatory in nature because Dr. Kroemer "chose the first author based on one's spoken English level, not one's contributions to the research[.]" JA0109. According to Dr. Liu, the selection is also discriminatory because Dr. Kroemer selected Dr. Loh "to foster" her as a "young woman[.]" JA0109. Together, the selection of Dr. Loh as the first author and her presentation of the data led to discrimination based on "age, national origin and sex." JA0111. Dr. Liu also alleges that Dr. Kroemer's conduct reflected racial discrimination, since Dr. Kroemer had previously granted first authorship to unnamed, white researchers who played similar roles in other projects. JA0110–11. No further information was ever provided about the white researchers.

With regard to the second incident, Dr. Liu alleges that Dr. Kroemer did not seek his permission before allowing Dr. Loh to present the data, which resulted in "discrimination in age and national origin[.]" JA0111. In the Complaint, Dr. Liu also alleges that this decision may also be sex discrimination. *See* JA0109. To support his claim, Dr. Liu compares his treatment to that of his colleague, Dr. Kang. Dr. Liu alleges that Dr. Kroemer asked Dr. Kang to allow Dr. Loh to take first authorship on "Kang's study," but Dr. Kang refused, saying he felt "uncomfortable." JA0109. Dr. Liu contends that Dr. Kroemer's decision to consult Dr. Kang but not him amounted to "triple age/national origin discrimination." JA0110. Finally, Dr. Liu concludes that this differential treatment reflected the University's preference for younger, non-Chinese researchers and demonstrated the University's broader pattern of discriminatory favoritism within Dr. Kroemer's lab. Appellant's Br. 1–4.

As for the third incident, Dr. Liu contends that his termination was both discriminatory and retaliatory for raising his concerns regarding the instances highlighted above. On June 27, 2019, the University terminated Dr. Liu's employment, citing poor performance and unprofessional conduct. The termination letter listed the grounds as including mislabeling samples, sleeping at his desk, missing mouse weights for two weeks, and incorrectly attributing results to a patient. The termination letter also mentioned that Dr. Liu demonstrated "an aggressive communication style with other lab members." JA0071. While Dr. Liu admits these events occurred, he alleges that they were minor and "inadequate for firing." JA0113. He alleges that his termination was reprisal for complaining about Dr. Loh's authorship and reflected discrimination based on national origin and age, noting that Dr. Kang—who also resisted Dr. Loh's authorship—remained employed. Following his termination, Dr. Liu filed complaints with the D.C. Office of Human Rights (OHR) alleging age and national origin discrimination and the Equal Employment Opportunity Commission (EEOC) also alleging age and national origin discrimination.

The final incident relates to Dr. Liu's contention that the University's refusal to grant him

4

post-termination access to data he helped create is retaliation for his OHR/EEOC complaint. JA0119–20. On November 24, 2020, over a year after his termination and while a case related to this action was open in D.C. Superior Court, Dr. Liu emailed Dr. Kroemer and others requesting access to his research data, including his "generated ferroptosis data" and the other scientific materials. JA0119–20. In the email, Dr. Liu stated, he "will withdraw the case from OHR after Dr. Kroemer agrees with letting [him] complete the rest [of his] experiments." JA0074. The University allegedly never responded. Dr. Liu goes on to allege that the lack of response from the University was retaliation for his OHR activity and constituted intentional racial discrimination. JA0119–23. To support his claim, Dr. Liu argues that any researcher should have the right to use data they produced for legitimate purposes. JA0119–23. He did not provide any University policies, contracts, or relevant case law to support this position.

**B.**

Dr. Liu, proceeding *pro se*, initially sued Dr. Kroemer and Dr. Loh in D.C. Superior Court in June 2020. The Superior Court dismissed his claims for conversion and trespass to chattels and declined to proceed on his discrimination claims because Dr. Liu had a pending OHR charge. Dr. Liu then sued the University in D.C. Superior Court in December 2021, alleging his OHR charges had been dismissed or withdrawn. The University removed the case to federal court, on the grounds that Dr. Liu asserted claims under federal law, including Title VII, the ADEA, and the Ninth Amendment.

The District Court granted in part and denied in part the University's second motion to dismiss. Dr. Liu's claims were all dismissed without prejudice except Dr. Liu's national origin and age discrimination claims under Title VII and the ADEA.* However, the District Court made it clear that the University could seek to dismiss the claims that survived in a motion for judgment on the pleadings. The District Court also highlighted several factual deficiencies in Dr. Liu's First Amended Complaint and encouraged Dr. Liu to fix those issues for future proceedings. Dr. Liu filed his Second Amended Complaint, which renewed his discrimination and retaliation claims, added sex and race discrimination claims, and dropped the Ninth Amendment and trespass claims.

The University moved for judgment on the pleadings, which the District Court granted in full. Dr. Liu retained counsel, and his counsel filed a motion for reconsideration, arguing several points including that the District Court applied the incorrect standard in evaluating the University's motion for judgment on the pleadings. The District Court denied Dr. Liu's motion for reconsideration. Dr. Liu filed a timely notice of appeal.

**II.**

---

* Because Dr. Liu was proceeding *pro se* at the time and some of the allegations and claims were not clear, the District Court construed the complaint as alleging discriminatory discharge, discrimination in employment terms (age and national origin), retaliatory discharge, post-termination retaliation, trespass, and Ninth Amendment violations. JA0188.

We review the District Court's grant of a motion for judgment on the pleadings *de novo*, taking the complaint's factual allegations as true. *Fox v. Gov't of D.C.*, 794 F.3d 25, 29 (D.C. Cir. 2015).

**A.**

Dr. Liu first contends that the District Court erred by applying the Rule 12(b) motion to dismiss standard while evaluating the University's Rule 12(c) motion for judgment on the pleadings because the Rule 12(c) burden is substantial and different from 12(b)(6). He is incorrect.

We have previously held that "a Rule 12(c) motion . . . is functionally equivalent to a Rule 12(b)(6) motion" when the asserted ground for judgment in the defendant's favor is the plaintiff's failure to state a claim. *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012). In *Haynesworth v. Miller*, we also explained that the "standard for awarding judgment on the pleadings is virtually identical" to a motion to dismiss. 820 F.2d 1245, 1254 (D.C. Cir. 1987), *abrogated in part on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006). Below, the District Court explained the standards for both Rule 12(b)(6) and Rule 12(c) and explicitly stated that the District Court would proceed by assuming the truth of Dr. Liu's complaint. The District Court then extensively analyzed and discussed Dr. Liu's Second Amended Complaint and assumed (to Dr. Liu's benefit) legal elements that were not addressed (e.g., potential remedies for Dr. Liu's discrimination claims). Because Dr. Liu initially proceeded *pro se*, the District Court held him to "less stringent standards than formal pleadings drafted by lawyers[.]" *Liu v. Georgetown Univ.*, 2024 WL 4362128, at *5 (D.D.C. Sept. 30, 2024), *reconsideration denied*, 2024 WL 5316247 (D.D.C. Dec. 12, 2024) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Finding no errors or abuse in the standard applied, we reject Dr. Liu's contention that the District Court applied the improper standard.

**B.**

Dr. Liu alleges that the University discriminated against him on the basis of his national origin in violation of both Title VII and 42 U.S.C. § 1981. The District Court held that Dr. Liu failed to state a claim under both laws. While we agree with the District Court's determination that Dr. Liu failed to state a claim for national origin discrimination, we conclude that the District Court applied a more stringent legal standard than what was required to reach this conclusion.

Title VII of the Civil Rights Act of 1964 "forbids employment discrimination 'against any individual' based on that individual's "race, color, religion, sex, or national origin."" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (quoting Pub. L. No. 88–352, § 704, 78 Stat. 257, as amended, 42 U.S.C. § 2000e–2(a)) (cleaned up). Typically, in Section 1981 and Title VII cases, we use the same framework for determining whether unlawful discrimination occurred. *See Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013). However, as the District Court below explained, Section 1981 does not prohibit national origin discrimination *per*

*se*, so a plaintiff must demonstrate "the discrimination is based on 'ancestry or ethnic characteristics,' [rather than] his country of origin, in order to prevail in a section 1981 suit" alleging national origin discrimination. *Liu*, 2024 WL 4362128, at *6 (quoting *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 273 (D.D.C. 2011)). Dr. Liu fails to meet the standard required to state a claim under Title VII and a Section 1981 claim would fail for largely the same reasons.

To prevail on the Title VII national origin discrimination claim, Dr. Liu needed to show that he (i) "suffered an adverse employment action (ii) because of [his] . . . national origin." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). Since Dr. Liu offers no direct evidence that the University performed the alleged adverse actions because of his national origin, he must allege circumstantial evidence to establish an inference of discrimination. *See Nurriddin v. Bolden*, 818 F.3d 751, 758 (D.C. Cir. 2016). One of the ways a plaintiff can raise an inference of discrimination is showing "that [he] was treated differently from similarly situated employees who are not part of the protected class." *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (quoting *George v. Leavitt,* 407 F.3d 405, 412 (D.C. Cir. 2005)). Below, the District Court misstated the standard for engaging in a comparator analysis at the motion for judgment on the pleading stage. At this early stage, a plaintiff proceeding on a comparator theory need only allege enough facts to allow a "plausible inference that he was treated differently because of his" protected trait. *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 530 (D.C. Cir. 2025). There was no need, as the District Court ruled, to plead facts showing that a comparator's circumstances are "nearly identical" in "all relevant aspects"—that is the summary judgment standard. *Id.* at 531. *Contra Liu*, 2024 WL 4362128, at *10 (quoting cases explaining the standard for evaluating a comparator analysis under Title VII at the summary judgment stage or a later stage).

Dr. Liu's national origin discrimination claim arises from Dr. Kroemer's (i) denial of Dr. Liu's first authorship of the abstract and poster as well as allowing Dr. Loh to present at two conferences, (ii) failure to ask for Dr. Liu's "consent" to give the first authorship to Dr. Loh, and (iii) termination of Dr. Liu's employment. JA0109–11, 0117. The District Court held that Dr. Liu failed to allege that he was treated differently from any similarly situated employees because, in part, the comparators he identified differed in job title and seniority. *See Liu*, 2024 WL 4362128, at *9–11. These differences at the pleading stage are not inherently fatal. There are some contexts in which other employees can be adequate comparators even though their job titles and seniority are not identical to the plaintiff's. At this early stage, a plaintiff need only allege "that a comparator was similarly positioned to the plaintiff in at least some relevant respects, and include[] enough detail that we could plausibly infer that discrimination caused the defendant's differential treatment of the plaintiff." *Joyner*, 140 F.4th at 531. Job title and seniority may not be "relevant respects" in every employment situation. In this case, for instance, Dr. Liu has alleged that he made "major contributions" to the study at issue, and that the "person" who "played major roles in" a study "shall" present it and be the first author. JA0109. Given those allegations, what seems more relevant for evaluating this claim is whether there are differences in Dr. Liu's and Dr. Loh's research contributions. For that reason, the District Court should have considered whether Dr. Liu said enough about these factors in his complaint, rather than treating the differences in job title and seniority as dispositive. Nevertheless, we affirm because that error

was harmless given Dr. Liu's failure to allege any *facts* plausibly suggesting that Dr. Loh's own contributions were not similarly significant—in other words, that Dr. Loh did not also make "major contributions" to the study.

We similarly find that the District Court erred in undertaking an analysis by mathematically comparing Dr. Liu's and Dr. Loh's contributions to the abstract and poster to determine whether they were similarly situated. *Liu*, 2024 WL 4362128, at *10. By focusing on the raw number of contributed portions rather than the significance of the content, the District Court failed to draw all reasonable inferences in Dr. Liu's favor. *See Joyner*, 140 F.4th at 529. But that error likewise was harmless because the complaint lacks sufficient allegations about Dr. Loh's and Dr. Liu's relative contributions to the overall study.

Dr. Liu also alleges that Dr. Kroemer discriminated against him because of "his thick accent and broken English." JA0229. We have held that under Title VII "a foreign accent and national origin are often intertwined, and courts can look to evidence of discrimination on the basis of one's accent in support of a claim of national origin discrimination." *Iyoha v. Architect of the Capitol*, 927 F.3d 561, 567 (D.C. Cir. 2019). Unlike the plaintiff in *Iyoha* who alleged direct evidence of discrimination, Dr. Liu does not allege that Dr. Kroemer or any other employee ever mentioned his accent or English-speaking ability. *See Iyoha*, 927 F.3d at 567–68. Accordingly, Dr. Liu must allege circumstantial evidence to establish an inference of national origin discrimination. His allegations come up short. The complaint again fails to allege facts allowing a reasonable inference that, even with his major contributions, he played a more prominent role overall in developing the study than Dr. Loh. He also has not alleged any other facts showing that his accent was plausibly a differentiating factor.

Dr. Liu asserts that his supervisor chose Dr. Loh to be first author without his permission because of his "ability to communicate in English" and chose undisclosed white persons to be first authors on two different projects. These allegations alone are not sufficient to give rise to an inference of national origin discrimination. There are also no allegations that Dr. Loh, who is from Malaysia, was treated better because of her country of origin or any indication that Dr. Kroemer had issues with China. Instead, Dr. Liu states that Dr. Loh had more opportunities to learn English sooner because of her country's relationship with the United States. But the mere fact that Dr. Loh has better English-speaking abilities than Dr. Liu does not support the inference that Dr. Kroemer's selection of her was based on this difference. Similarly, Dr. Liu has not alleged any facts to show that he and Dr. Kang were similarly situated in any relevant respect in their research work and contributions, despite the differences in their tenure and positions. As for the white researchers, Dr. Liu fails to provide any facts about the researchers to establish that any one of them is indeed similarly situated in at least some relevant respect. He has not provided any identifiers, positions, job responsibilities, or any other relevant characteristics that show that the white employees are apt comparators. For this claim to survive, we would need to do more than make inferences and instead assume allegations on Dr. Liu's behalf that are not supported or raised anywhere in the record. We therefore affirm the District Court's holding that Dr. Liu has not alleged sufficient facts to state a claim for national origin discrimination.

**C.**

Dr. Liu next contends that the University racially discriminated against him because of his "ethnic traits of poor English and [] thick accent." The District Court dismissed Dr. Liu's racial discrimination claim under 42 U.S.C. § 1981 because Dr. Liu's "allegations do not give rise to an inference of discrimination." *Liu*, 2024 WL 4362128, at *6. We agree.

To successfully assert a claim under Section 1981 for racial discrimination, "a plaintiff without direct evidence of discrimination as it relates to contractual rights must first ... establish[ ] that (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination." *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 622 (D.C. Cir. 2023) (quoting *Sessoms*, 774 F.3d at 1022) (cleaned up). The first two elements are not contested: Dr. Liu alleges that he is Asian, which is a protected racial class, and he suffered an adverse employment action—deprivation of "first authorship" and presentation opportunities. The third element, which requires an "inference of discrimination," is the fatal flaw in Dr. Liu's allegations.

Under Section 1981, "[a] plaintiff can raise an inference of discrimination by showing 'that [he] was treated differently from similarly situated employees who are not part of the protected class.'" *Brown*, 774 F.3d at 1022 (citing *Leavitt*, 407 F.3d at 412); *see also Wright*, 68 F.4th at 622 (explaining why a plaintiff made an inference of racial discrimination by comparing herself to a similarly situated white employee). Here, Dr. Liu fails to raise a claim for inference of racial discrimination because the two comparators he identifies to advance his claim are either from the same protected class or insufficient facts are alleged to show they are similarly situated. First, Dr. Liu compares himself to Dr. Loh, which fails because he has alleged only that they are both "Asian" and thus that they both share Asian ancestry and are thus in the same protected racial class for purposes of the Section 1981 analysis. JA0106. Second, Dr. Liu mentions white researchers in his complaint, but fails to provide any facts about the researchers to establish these unknown employees are similarly situated. On appeal, Dr. Liu asserts that there is no need to compare himself to another employee at all to state a claim under Section 1981. That may be true, *see Wright*, 68 F.4th at 622–23, but a plaintiff must still make sufficient allegations to "raise [his] right to relief above the speculative level[.]" *Id.* at 622–23 & n.3 (internal citation marks omitted). Dr. Liu does not offer an alternative theory for plausibly inferring racial discrimination based on the pleadings or further engage with the holding by the District Court. He simply restates the facts as presented in the complaint and argues they are sufficient. Without alleging facts plausibly supporting an inference of racial discrimination, Dr. Liu has not stated a claim of discrimination under Section 1981. We therefore affirm the District Court's holding that Dr. Liu failed to state a claim for racial discrimination.

**D.**

Dr. Liu also claims that the University discriminated against him based on his sex in violation of Title VII. We affirm the District Court's rejection of Dr. Liu's sex discrimination claim for failure to exhaust administrative remedies.

A plaintiff bringing a Title VII claim must exhaust their administrative remedies with the

appropriate employment office before filing suit. *See Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (citing *Bowden v. United States,* 106 F.3d 433, 437 (D.C. Cir. 1997)). Here, Dr. Liu filed some, but not all, of his Title VII claims with OHR and EEOC. *See* No. 1:22-cv-00157, Dkt. 30-5, at 2 (OHR Charge citing only "age" and "national origin" discrimination). Below, Dr. Liu argued that he did "exhaust[] [his] sources" with regards to his sex discrimination claim because he gave the University notice of the claim in two instances: by sending an email to the University offering to settle the case and in his opposition to the University's motion to dismiss. JA0197. Providing notice of a claim to the opposing party is not the same as exhausting administrative remedies related to the claim prior to filing suit. We agree with the District Court's holding that Dr. Liu failed to exhaust his administrative remedies with respect to the sex discrimination claim because Dr. Liu did not follow the proper procedures. On appeal, Dr. Liu now argues that he did exhaust his sex discrimination claim with the OHR because he gave "[the University] the necessary information for a sex discrimination claim." Since there is no indication that Dr. Liu presented his allegations and information to the EEOC or OHR as the law requires, rather than to the litigating party, we affirm the District Court's dismissal of the sex discrimination claim.

**E.**

Dr. Liu's ADEA age discrimination claim arises from the same incidents as the claims above: Dr. Loh's presentation of the abstract and poster, Dr. Kroemer's failure to seek Dr. Liu's consent for Dr. Loh to present these items as first author, and Dr. Liu's termination. Dr. Liu alleges that Dr. Kroemer took or allowed these actions to occur because of his age. The District Court dismissed Dr. Liu's age discrimination claim for lack of standing. We affirm.

The ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). We have held that, in the federal-employment context, the ADEA provides only reinstatement, backpay, or injunctive or declaratory relief. *Seed v. Env't Prot. Agency*, 100 F.4th 257, 263 (D.C. Cir. 2024) (citing *Steele v. Mattis*, 899 F.3d 943, 945 (D.C. Cir. 2018)). A plaintiff lacks Article III standing to pursue an ADEA claim where the statute does not provide any of the remedies that are sought by the plaintiff. *Id.* at 263–65.

Below, Dr. Liu sought compensatory and/or punitive damages, and the District Court held that neither is available as a relief under the ADEA. *See Liu*, 2024 WL 4362128, at *12. On appeal, Dr. Liu concedes that he is not challenging that portion of the District Court's holding. *See* Appellant's Br. 30. Rather, he argues only that he was entitled to a declaratory judgment as a means of establishing standing. *Id.* at 31. As the District Court held below, and we affirm, declaratory relief is not available to Dr. Liu. *Liu*, 2024 WL 4362128, at *13. There are no allegations that Dr. Liu is likely to return to work in Dr. Kroemer's lab where he might suffer age discrimination again. *Id.* Therefore, there is "no case or controversy of 'sufficient immediacy and reality' ... to allow a declaratory judgment." *Seed*, 100 F.4th at 265 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 104 (1983)). We therefore affirm the District Court's dismissal of

Dr. Liu's age discrimination claim for lack of standing. In addition, the District Court reasoned that this remedy analysis did not apply to Dr. Liu's claim regarding his age-based termination because that claim failed on the merits. JA0208–09. Since Dr. Liu does not address that separate conclusion on appeal, we do not consider it.

**F.**

Finally, Dr. Liu alleges retaliation claims under both Section 1981 and DCHRA (D.C. Code § 2-1402.61(a)), premised on two events: (1) the University's decision to terminate his employment; and (2) the University's alleged failure to respond to his request for data access 16 months following his discharge. We affirm the District Court's holding that Dr. Liu failed to state a claim for retaliation.

A plaintiff can establish a prima facie case of retaliation under the DCHRA by showing "(1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 577 (D.C. Cir. 2010) (quoting *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009)). Likewise, "[t]o establish a retaliation claim under Section 1981, a plaintiff must show that he engaged in protected activity—such as filing an EEOC complaint—and that his employer took an adverse employment action against him because of that activity." *Ayissi-Etoh*, 712 F.3d at 578 (citing *Holcomb v. Powell,* 433 F.3d 889, 901–02 (D.C. Cir. 2006)). Dr. Liu fails to state a claim under both Section 1981 and the DCHRA.

As for Dr. Liu's retaliatory discharge claim, he fails to state a claim because he has not alleged that his termination was based on his participation in a statutorily protected activity. *See Jones*, 557 F.3d at 677. While there is no exhaustive list of what actions constitute protected activity under DCHRA or Section 1981, we agree with the District Court that Dr. Liu's email to Dr. Kroemer, which merely expresses that he was uncomfortable with Dr. Loh presenting his results without his consent and asserts that he should be the first author, is not the type of conduct we have previously deemed protected. Section 1981 and DCHRA protect against retaliation against people "who have either opposed employment practices rendered unlawful by the statute in question or participated in proceedings to prevent or remedy such practices[.]" *See, e.g.*, *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006) ("Not every complaint garners its author protection under Title VII. . . . While no 'magic words' are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition.") (collecting cases); *Singletary v. D.C.*, 351 F.3d 519, 524–25 (D.C. Cir. 2003); ABIGAIL MODJESKA, 1 EMPLOYMENT DISCRIMINATION LAW § 1:4. Retaliation: Statutory provisions, protected individuals, burdens of proof, protected activity, adverse action, and causal link (3rd ed. 2025). Dr. Liu does not allege that he was committing any such activity. Even viewing Dr. Liu's complaint in the light most favorable to him, his conduct does not constitute protected activity.

Dr. Liu's post-termination retaliation claim is equally ineffective as Dr. Liu fails to plead that he suffered a materially adverse action by the University. Different than his first retaliation claim, Dr. Liu filed a complaint with the OHR prior to the events underlying this claim, which is

sufficient to meet the "statutorily protected activity" prong for this second retaliation claim. *See Beckwith v. Career Blazers Learning Ctr. of Wash., D.C., Inc.*, 946 F. Supp. 1035, 1042 (D.D.C. 1996) ("The filing of the complaint, regardless of its merits, is a 'statutorily protected activity' under both the DCHRA and § 1981.") (citing *Berger v. Iron Workers Reinforced Rodmen Loc. 201,* 843 F.2d 1395, 1425 (D.C. Cir. 1988)). The issue exists with the second and third prongs: (2) "that [he] suffered a materially adverse action by [his] employer; and (3) that a causal link connects the two." *Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49, 73 (D.D.C. 2019). There are no allegations in Dr. Liu's complaint that he suffered an adverse action. The District Court, generously, explained on two occasions that Dr. Liu failed to explain why he was entitled to the data at issue, either because of the University's policy, some contractual obligation, or even a common practice unique to his lab. *See Liu*, 2024 WL 4362128, at *15. On appeal, Dr. Liu still fails to identify any precedent or authority supporting his claim that he was plausibly entitled to the data at issue. We therefore affirm the District Court's holding that Dr. Liu failed to state a claim for retaliation under the DCHRA and Section 1981.

**III.**

We review "the denial of a Rule 60(b) motion . . . for abuse of discretion." *Murray v. District of Columbia*, 52 F.3d 353, 355 (D.C. Cir. 1995). We hold that the District Court did not abuse its discretion in denying reconsideration.

"[T]he abuse of discretion standard means that the [district] court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *United States v. Volvo Powertrain Corp.*, 758 F.3d 330, 345 (D.C. Cir. 2014) (citations omitted) (second alteration in original). Rule 60(b) authorizes a district court to "relieve a party or its legal representative from a final judgment, order, or proceeding" on one of six grounds: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; or (6) any other reason that justifies relief. FED. R. CIV. P. 60(b).

Below, on a Rule 60(b)(1) motion, Dr. Liu argued that the District Court mistakenly applied the motion to dismiss standard when evaluating the University's motion for judgment on the pleadings. No. 1:22-cv-00157, Dkt. 76 at 4–9. As we discussed above, we have held that the "standard for awarding judgment on the pleadings is virtually identical" to a motion to dismiss. *Haynesworth*, 820 F.2d at 1254. Dr. Liu also argued that granting the motion for judgment on the pleadings was improper because there were still material questions of fact and therefore relief under Rule 12(c) was not available. No. 1:22-cv-00157, Dkt. 76 at 5. However, Dr. Liu does not identify material facts that, if true, would change the outcome of this case. For instance, he points to the University's answer in which the defendant claims not to have sufficient knowledge regarding Dr. Loh's age, nationality, or gender. *Id.* at 8. It is irrelevant whether the University knew this information, as the allegations about the University's knowledge of these facts were assumed to be true as presented in Dr. Liu's complaint. He also pointed to allegations in which the University disagreed with his characterization of an allegation or denied a conclusion raised

by Dr. Liu. *Id.* at 9. These allegations were also viewed in the light most favorable to Dr. Liu as the non-moving party and were still not sufficient to state a claim for discrimination or retaliation. Finally, Dr. Liu attempted to relitigate his national origin discrimination claims, restating nearly identical arguments already raised in the prior briefing. *Id.* at 9–12. We find there are no instances of mistaken law or holdings in the District Court's denial of reconsideration that are beyond the appropriate range of discretion afforded to the District Court. Therefore, we affirm the District Court's denial of the motion for reconsideration.

For the foregoing reasons, we affirm the District Court's dismissal of Dr. Liu's claims under Rule 12(c) and its denial of Dr. Liu's Rule 60(b) motion for reconsideration.

\* \* \*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* FED. R. APP. P. 41 (b); D.C. CIR. R. 41(a)(1).

**<u>Per Curiam</u>**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY: /s/
Michael C. McGrail
Deputy Clerk